

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA D. C.,<br><br>               Plaintiff,<br><br>    v.<br><br>ANDREW M. SAUL, Commissioner of<br>Social Security,<br>               Defendant. | Case No.  EDCV 19-00532-RAO<br><br><br>**MEMORANDUM OPINION AND ORDER** |

## I.   INTRODUCTION

Plaintiff Maria D. C.[1] ("Plaintiff") challenges the Commissioner's denial of her application for a period of disability and disability insurance benefits ("DIB").[2]

///

---

[1]  Plaintiff's name is partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2]  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul, the current Commissioner of Social Security, is hereby substituted as the defendant herein.

For the reasons stated below, the decision of the Commissioner is REVERSED and the action is REMANDED.

## II.    **PROCEEDINGS BELOW**

On March 21, 2013, Plaintiff protectively filed a Title II application for DIB alleging disability beginning November 23, 2011. (Administrative Record ("AR") 57, 65, 174.) Her application was denied initially on August 12, 2013, and upon reconsideration on January 30, 2014. (AR 73-77, 80.) Plaintiff requested a hearing, and a hearing was held on August 6, 2015. (AR 29, 85-86.) Plaintiff, represented by counsel and assisted by a Spanish interpreter, appeared and testified, along with an impartial vocational expert. (AR 29-56.) On September 9, 2015, the Administrative Law Judge ("ALJ") found that Plaintiff had not been under a disability, pursuant to the Social Security Act,[3] from November 23, 2011 through September 30, 2013, the date last insured. (AR 24.) The Appeals Council denied Plaintiff's request for review (AR 1), and Plaintiff filed an action in this Court on January 19, 2017. (AR 442-47.)

The ALJ followed a five-step sequential evaluation process to assess whether Plaintiff was disabled under the Social Security Act. *Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995). At **step one**, the ALJ found that Plaintiff had not engaged in substantial gainful activity from November 23, 2011, the alleged onset date ("AOD"), through September 30, 2013, her date last insured. (AR 18.) At **step two**, the ALJ found that Plaintiff's fibromyalgia was a severe impairment. (*Id.*) At **step three**, the ALJ found that Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (AR 20.)

Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to:

---

[3] Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment expected to result in death, or which has lasted or is expected to last for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A).

2

> [P]erform a restricted range of light work . . . specifically as follows:
> she can lift and carry up to 20 pounds occasionally and 10 pounds
> frequently; she can stand and walk approximately six hours of an eight-
> hour workday and sit approximately six hours of an eight-hour workday,
> with normal breaks; she can occasionally balance, stoop, kneel, crouch,
> crawl, and climb ramps, stairs, ladders, ropes, and scaffolds.

(*Id.*)

At **step four**, based on Plaintiff's RFC and the vocational expert's testimony, the ALJ found that Plaintiff was capable of performing past relevant work as a fast food worker and fast food cook. (AR 22.) The ALJ also made an alternative **step five** finding that Plaintiff could perform other jobs that existed in significant numbers in the national economy. (AR 23-24.) Accordingly, the ALJ found that Plaintiff had not been under a disability from the AOD through the date last insured. (AR 24.)

On January 26, 2018, this Court found that the ALJ failed to provide clear and convincing reasons supported by substantial evidence to discount Plaintiff's subjective testimony, reversed the ALJ's decision denying benefits, and remanded to "reassess Plaintiff's subjective allegations in light of SSR 16-30 . . . , then reassess Plaintiff's RFC in light of the reassessment of Plaintiff's subjective allegations and proceed through step four and step five, if necessary, to determine what work, if any, Plaintiff is capable of performing." (AR 457-58.) In doing so, the Court declined to address Plaintiff's remaining argument that the ALJ improperly considered the medical evidence. (AR 456-57.)

Accordingly, on March 23, 2018, the Appeals Council vacated the ALJ's decision and remanded the case to an ALJ for further proceedings consistent with this Court's order. (AR 463.)

On November 28, 2018, a hearing on remand was held, and Plaintiff, once again represented by counsel and assisted by a Spanish interpreter, appeared and testified, along with an impartial vocational expert. (AR 405-16.) On January 22,

2019, the ALJ found that Plaintiff had not been under a disability, pursuant to the Social Security Act, from November 23, 2011 through September 30, 2013, the date last insured.   (AR 380-89.)   On approximately March 22, 2019, the ALJ's unfavorable decision of January 22, 2019 became final.  (Joint Submission ("JS") at 4.)  Plaintiff filed this action on March 25, 2019.  (Dkt. No. 1.)

On remand, the ALJ followed the five-step sequential evaluation process to assess whether Plaintiff was disabled.  At **step one**, the ALJ found that Plaintiff had not engaged in substantial gainful activity from November 23, 2011, the alleged onset date, through September 30, 2013, her date last insured.  (AR 382.)  At **step two**, the ALJ found that Plaintiff's fibromyalgia was a severe impairment.  (AR 383.)  At **step three**, the ALJ found that Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (*Id*.)

Before proceeding to step four, the ALJ found that Plaintiff had the RFC to:

[P]erform light work . . . except she can:  lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk for 6 hours of an 8-hour workday; sit for 6 hours of an 8-hour workday; occasionally climb ramp/stairs and ladders/ropes/scaffolds; and, occasionally balance, stoop, kneel, crouch, and crawl.

(*Id*.)

At **step four**, based on Plaintiff's vocational background and hearing testimony from Plaintiff and the vocational expert, the ALJ found that Plaintiff was unable to perform any past relevant work.  (AR 387.)  At **step five**, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed.  (AR 388.)  Accordingly, the ALJ found that Plaintiff had not been under a disability from the AOD through the date last insured.  (*Id*.)

///

///

4

### III.   STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  A court must affirm an ALJ's findings of fact if they are supported by substantial evidence, and if the proper legal standards were applied. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001).  "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue,* 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Robbins v. Soc. Sec. Admin.,* 466 F.3d 880, 882 (9th Cir. 2006)).  An ALJ can satisfy the substantial evidence requirement "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citation omitted).

"[T]he Commissioner's decision cannot be affirmed simply by isolating a specific quantum of supporting evidence.  Rather, a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Secretary's conclusion." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001) (citations and internal quotations omitted).  "'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld."  *Ryan v. Comm'r of Soc. Sec.,* 528 F.3d 1194, 1198 (9th Cir. 2008) (citing *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)); *see also Robbins,* 466 F.3d at 882 ("If the evidence can support either affirming or reversing the ALJ's conclusion, we may not substitute our judgment for that of the ALJ.").  The Court may review only "the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely."  *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (citing *Connett v. Barnhart,* 340 F.3d 871, 874 (9th Cir. 2003)).

### IV.   DISCUSSION

Plaintiff raises essentially the same issues as those set forth in her initial civil action:  (1) whether the ALJ properly considered the relevant medical evidence in

1  assessing Plaintiff's RFC; and (2) whether the ALJ properly considered Plaintiff's
2  subjective complaints and testimony.  (JS at 5-6.)  For the reasons below, the Court
3  agrees with Plaintiff that remand is warranted.

4       **A.**    **The ALJ Erred in Considering the Relevant Medical Evidence of**
5          **Record in Assessing Plaintiff's RFC**

6       Plaintiff contends that the ALJ failed to properly consider the relevant medical
7  evidence in assessing Plaintiff's RFC.  (JS at 6-12.)

8       As an initial matter, after the Joint Submission was filed, the Court directed
9  counsel to file supplemental briefing on the issue whether the Court could consider
10  issues raised by Plaintiff that were beyond the scope of the remand.  (Dkt. No. 19.)
11  Plaintiff argued that although the remand was on the credibility issue, the Court did
12  not restrict the ALJ only to the credibility analysis.  (Dkt. No. 21.)  Plaintiff pointed
13  out that the Court declined to address Plaintiff's argument that the ALJ improperly
14  considered the medical evidence and implied that it could be addressed on remand.
15  (*Id.*)  Defendant argued that the Court's remand was on the issue of credibility and
16  thus bars consideration of the medical evidence issue, and that law of the case applies
17  because the Court implicitly decided the step two issue when remanding starting with
18  the RFC.  (Dkt. No. 20.)

19       "The law of the case doctrine generally prohibits a court from considering an
20  issue that has already been decided by that same court or a higher court in the same
21  case."  *Stacy v. Colvin*, 825 F.3d 563, 566-67 (9th Cir. 2016) (citation omitted)
22  (holding the law of the case doctrine applies in the social security context).  The
23  relevant question here is whether the Court decided the medical evidence issue when
24  it remanded the case on the issue of credibility.  This is not a case where the ALJ
25  changed the step two determination or weighed the medical opinions differently from
26  the first hearing.  Viewing the remand order as a whole, the Court finds that it did not
27  previously decide the medical evidence issue.  *See id.* at 568 ("[T]he remand order
28  must be read holistically.")  In the remand order, the Court did not address Plaintiff's

argument on the issue of medical evidence, having decided to remand on the subjective symptom testimony.  (AR 456.)  Even though the Court ordered reassessment of Plaintiff's subjective allegations, the RFC and steps four and five, and the ALJ appears not to have reassessed the step two determination or weighed the medical opinion evidence differently, Plaintiff was not precluded from raising the medical evidence issue again.  (AR 456-57.)

The ALJ is responsible for assessing a claimant's RFC "based on all of the relevant medical and other evidence."  20 C.F.R. §§ 404.1545(a)(3), 404.1546(c); *see Robbins*, 466 F.3d at 883 (citing SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996)).  In doing so, the ALJ may consider any statements provided by medical sources, including statements that are not based on formal medical examinations. *See* 20 C.F.R. §§ 404.1513(a), 404.1545(a)(3).  An ALJ's determination of a claimant's RFC must be affirmed "if the ALJ applied the proper legal standard and his decision is supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005); *accord Morgan v. Comm'r of Soc. Sec. Admin*., 169 F.3d 595, 599 (9th Cir. 1999).

### 1.  Step Two

Plaintiff argues that the ALJ erred in his step two finding that Plaintiff's only severe impairment was fibromyalgia.  (JS at 6-10.)  Specifically, Plaintiff argues that the ALJ did not consider the limiting effects of her depression, anxiety, rheumatoid arthritis, and anemia.  (JS at 6-10.)

Here, the ALJ found one severe impairment:  fibromyalgia.[4]  (AR 383.)  Even assuming the ALJ erred in making his step two determination, any error was harmless because he considered all symptoms when determining Plaintiff's RFC.  (AR 383.) *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (failure to address particular

---

[4] Notably, Plaintiff testified that the only medical problem causing her to be disabled was fibromyalgia, and her attorney clarified that depression and her other symptoms were characteristics of fibromyalgia.  (AR 43-44.)

1   impairment at step two harmless if ALJ fully evaluated claimant's medical condition

2   in later steps of the sequential evaluation process).

3                     **2.  Medical Opinion Evidence**

4        Plaintiff contends that the ALJ did not give specific and legitimate reasons for

5   rejecting Dr. Tremazi's opinion regarding the effect of fibromyalgia on her ability to

6   work.  (JS at 10-12.)

7        Courts give varying degrees of deference to medical opinions based on the

8   provider:  (1) treating physicians who examine and treat; (2) examining physicians

9   who examine, but do not treat; and (3) non-examining physicians who do not examine

10  or treat.  *Valentine v. Comm'r, Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009).

11  Most often, the opinion of a treating physician is given greater weight than the

12  opinion of a non-treating physician, and the opinion of an examining physician is

13  given greater weight than the opinion of a non-examining physician. *See Garrison v.*

14  *Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).

15       The ALJ must provide "clear and convincing" reasons to reject the ultimate

16  conclusions of a treating or examining physician.  *Embrey v. Bowen*, 849 F.2d 418,

17  422 (9th Cir. 1988); *Lester*, 81 F.3d at 830-31.  When a treating or examining

18  physician's opinion is contradicted by another opinion, the ALJ may reject it only by

19  providing specific and legitimate reasons supported by substantial evidence in the

20  record. *Orn*, 495 F.3d at 633; *Lester*, 81 F.3d at 830; *Carmickle v. Comm'r*, *Soc. Sec.*

21  *Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008).  "An ALJ can satisfy the 'substantial

22  evidence' requirement by 'setting out a detailed and thorough summary of the facts

23  and conflicting evidence, stating his interpretation thereof, and making findings.'"

24  *Garrison*, 759 F.3d at 1012 (citation omitted).

25       Here, the ALJ erred in giving greater weight to the objective medical evidence

26  over the medical opinion evidence in determining whether Plaintiff was disabled.  He

27

28

gave "little weight" to rheumatologist Dr. Tremazi's treating opinion.[5]  (AR 386.)
The record shows that Dr. Tremazi treated Plaintiff from 2012 until at least 2018.
(AR 235-54, 349-73, 603-62.)   In November 2014, Dr. Tremazi completed a
fibromyalgia RFC questionnaire in which he opined, in part, that Plaintiff met the
American College of Rheumatology criteria for fibromyalgia based on her constant
pain and tender points; she could stand, sit or walk about two hours in an eight-hour
working day; she would need to take unscheduled breaks every half an hour for half
an hour; and she would be absent from work as a result of her impairments or
treatment more than four days per month.  (AR 361-65.)  The ALJ found that "the
treatment records through the date last insured of September 30, 2013, which are
discussed above, do not support the limitations Dr. Tremazi assessed, which would
preclude work at all exertional levels."  (AR 386.)

The ALJ also gave "little weight" to the consultative examiner's and the State
agency medical consultants' opinions that Plaintiff's fibromyalgia did not result in
any functional limitations and was nonsevere, finding that these sources did not
review the evidence received at the hearing level or adequately consider Plaintiff's
subjective complaints.[6]  (AR 386.)

The Court finds that the reason given by the ALJ for discounting Dr. Tremazi's
opinion, which was contradicted by other physicians, is not specific and legitimate
and supported by substantial evidence.  The ALJ noted that although Dr. Tremazi
found 18 of 18 tender points, he found normal range of motion of the hands, wrists,
elbows, shoulders, cervical spine, lumbar spine, hips, knees and ankles.  (AR 249,

---

[5]  "Rheumatology is the relevant specialty for fibromyalgia."  *Benecke v. Barnhart*,
379 F.3d 587, 594 n.4 (9th Cir. 2004) (citation omitted).

[6] The parties agreed that the consultative examiner, Dr. Bernabe, was no longer an
accepted medical source.  (AR 415.)  The remaining opinion of the nonexamining
State agency doctor, even if accepted, "cannot by itself constitute substantial
evidence that justifies the rejection of . . . a treating physician."  *Lester*, 81 F.3d at
831 (citations omitted).

384-85.)   Plaintiff's musculoskeletal and neurological examinations were also negative.  (AR 236, 243, 245, 385.)  Although Dr. Tremazi included fibromyalgia syndrome under "past medical history,"[7] he diagnosed Plaintiff with myalgia and myositis, unspecified.  (AR 249, 385.)  Dr. Tremazi discontinued amitriptyline and encouraged Plaintiff to exercise.  (AR 242, 385.)  Lyrica was effective.  (AR 236, 385.)

Fibromyalgia is "a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments, and other tissue," with typical symptoms such as "chronic pain throughout the body, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue associated with this disease."  *Benecke*, 379 F.3d at 589-90 (citations omitted).  Fibromyalgia has "unique symptoms and diagnostic methods" and cannot be demonstrated by laboratory tests, such as x-rays or MRIs.  *Revels v. Berryhill*, 874 F.3d 648, 656-57 (9th Cir. 2017).  Those suffering from fibromyalgia may have normal muscle strength, sensory functions, and reflexes.  *Id.* at 656.  Fibromyalgia is "diagnosed entirely on the basis of patients' reports of pain and other symptoms."  *Benecke*, 379 F.3d at 590.  Under Agency rules, tender-point examinations constitute "objective medical evidence" of fibromyalgia, and fibromyalgia is a valid "basis for a finding of disability."  SSR 12-2p, 2012 WL 3104869, at *2-3 (July 25, 2012).  Symptoms of fibromyalgia can "wax and wane," and an analysis of a claimant's RFC should consider "a longitudinal record."  *Id.* at *6.

The ALJ's rejection of Dr. Tremazi's opinion based on normal range of motion and negative musculoskeletal and neurological examinations shows a lack of understanding about fibromyalgia, which is diagnosed based on "patients' reports of pain and other symptoms."  *See Benecke*, 379 F.3d at 590.  The treatment records

---

[7] A different rheumatologist, Dr. Sebai, found symptoms suggestive of fibromyalgia syndrome in November and December 2011 and referred Plaintiff to Dr. Tremazi for a second opinion.  (AR 319, 324.)  Yet another rheumatologist treated Plaintiff for fibromyalgia as noted in September 2013.  (AR 266.)

show that Plaintiff saw Dr. Tremazi on a consistent basis for fibromyalgia syndrome and chronic pain at least six times during the relevant time period.  (AR 236-50.)  In May 2012, rheumatoid arthritis was ruled out.  (AR 246.)  Dr. Tremazi consistently noted abnormal joints, bones and muscles with 18/18 tender points,[8] chronic pain of 7/10 or 8/10, and nonrestorative sleep, which was in line with the findings he noted in his 2014 opinion. (AR 237, 240, 242, 243, 245-46, 248-50.)  Plaintiff was treated with Gabapentin, Lyrica and ibuprofen for nerve pain, and amitriptyline for depression, and was encouraged to exercise as part of her treatment.  (AR 236-50.)  The ALJ points out that amitriptyline was discontinued, but at that visit, Plaintiff started Zoloft, which is another antidepressant.  (AR 242.)  As of April 2013, Lyrica helped Plaintiff "more," but her pain level remained at 7/10 and she had problems getting insurance coverage for Lyrica.  (AR 236.)  In any event, centering on Lyrica's effectiveness at only one point in time was error.  *See Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014) (reviewing court "may not affirm simply by isolating a specific quantum of supporting evidence") (citations omitted).

To the extent the ALJ discounted Dr. Tremazi's opinion because he diagnosed Plaintiff with "myalgia and myositis, unspecified," the ALJ erred.  Throughout the relevant time period, there was no diagnostic code for fibromyalgia.  *See* Karen Lee Richards, "The Official Fibromyalgia ICD-10 Diagnostic Code," PROHEALTH.COM (Sept. 30, 2019)*,*   https://www.prohealth.com/library/fibromyalgia-is-finally-recognized-as-an-official-diagnosis-37536.  Fibromyalgia was not recognized with a diagnostic code until October 1, 2015.  *Id.*  "Prior to the adoption of [the code for fibromyalgia], when diagnosing a patient with fibromyalgia, doctors had to use the general code:  729.1 – Myalgia and myositis, unspecified . . . . But now . . . it is recognized as a distinct entity with its own unique code:  M79.7 – Fibromyalgia."  *Id.*  Notably, Dr. Tremazi diagnosed Plaintiff with "729.1 (Primary) – Myalgia and

---

[8] Eleven tender points are needed for a diagnosis of fibromyalgia.  *See* SSR 12-2p, at *2-3.

myositis, unspecified" until her appointment in August 2015; starting in November 2015, he diagnosed Plaintiff with "M79.7 (Primary) – Fibromyalgia." (AR 612, 616.) Given that Dr. Tremazi repeatedly referenced his treatment of Plaintiff for fibromyalgia throughout the treatment records and he changed the diagnosis to fibromyalgia when the diagnostic code was adopted, the ALJ erred to the extent he discounted Dr. Tremazi's opinion for failure to diagnose fibromyalgia.

In sum, the Court finds that the ALJ did not properly consider Dr. Tremazi's treating opinion in assessing Plaintiff's RFC, and remand is warranted.

## B.   **The ALJ Failed to Properly Consider Plaintiff's Subjective Complaints and Testimony**

Plaintiff argues that the ALJ failed, again, to properly consider Plaintiff's subjective statements in assessing her RFC. (JS at 16-19.)

### 1. Plaintiff's Testimony

At the first hearing in 2015, Plaintiff testified with the assistance of a Spanish interpreter. (AR 31.) Plaintiff was 50 years old, married, and has four children. (AR 33-34.) She completed sixth grade in Mexico and can read and speak very little English. (AR 35-36.) Plaintiff drives to the market or to the doctor "when it's needed," which is no more than two or three times a week. (AR 34.)

Plaintiff testified that she is not able to work because she is tired, she has no strength, and the pain is "too much." (AR 37.) She has pain in all of her joints. (*Id.*) Plaintiff is tired "all the time" and does not feel rested in the morning. (AR 38.) She feels like her energy level has decreased by seventy-five percent. (*Id.*)

Plaintiff goes walking after she wakes up in the morning, and then she does household chores even though "it's very difficult," because she "like[s] to be active" and wants to have a normal life. (*Id.*) Plaintiff tries to do her chores even if she feels tired because she likes her house to look good. (*Id.*) Plaintiff does her chores off and on throughout the day, "[a]s [her] body allows [her]," resting for a few minutes in different positions. (AR 39.) Plaintiff cannot go a full day without lying down. (*Id.*)

12

Before her date last insured, Plaintiff walked one hour every day from Monday through Friday.  (AR 46.)  She also tried to stretch her hands and "move a little bit." (*Id.*)  Despite her pain, Plaintiff tried to stay active and walk every day because she does not "want the day to come that [she] won't be able to move at all." (*Id.*)

Plaintiff tried to work part time for about four hours a day in 2011, but she "couldn't do it."  (AR 39.)  She explained that it was hard to work outside the home and also do her housework.  (AR 39-40.)  If Plaintiff did not have housework, she still could not have worked a full eight-hour day due to her tiredness and pain.  (AR 40.)  Plaintiff also took care of her grandson for a few months in 2014.  (AR 37.)

Plaintiff described a "numbness, like tingling" throughout her whole body. (AR 40.)  Her pain and fatigue are worse now than three or four years ago.  (*Id.*) Plaintiff also feels depressed and useless.  (AR 42.)

Plaintiff has been treated by two rheumatologists and has been prescribed several different medications for pain and fibromyalgia.  (AR 41, 46.)  Her doctors change her medications, which "work for a little bit and then they don't."  (AR 41.) Her medications help the pain for a few hours.  (AR 46.)  Plaintiff takes medication to sleep because her pain prevents her from sleeping.  (AR 42.)

Plaintiff stated that her doctor told her that fibromyalgia causes all of her symptoms, and that is the only medical diagnosis she currently has.  (AR 45.)

At the second hearing in 2018, Plaintiff testified with the assistance of a Spanish interpreter.  (AR 409.)  She testified that since the last hearing, she has "[e]ven more" pain and her fatigue is worse.  (AR 410.)  She could lift "[m]aybe five pounds quickly, but [she] would have to put it down because of [her] fingers."  (AR 415.)

### 2.  Applicable Legal Standards

"In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms, the ALJ engages in a two-step analysis."  *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (citing *Vasquez v. Astrue*, 572 F.3d

586, 591 (9th Cir. 2009)).  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (quoting *Lingenfelter*, 504 F.3d at 1036) (internal quotation marks omitted).  If so, and if the ALJ does not find evidence of malingering, the ALJ must provide specific, clear and convincing reasons for rejecting a claimant's testimony regarding the severity of his symptoms.  *Id.*  The ALJ must identify what testimony was found not credible and explain what evidence undermines that testimony.  *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001).  "General findings are insufficient."  *Lester*, 81 F.3d at 834.[9]

### 3. Discussion

"After careful consideration of the evidence," the ALJ found that Plaintiff's "medically determinable impairment could reasonably be expected to cause some of the alleged symptoms," but found that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record."  (AR 384.) The ALJ relied on the following reasons:  (1) effective treatment; (2) Plaintiff's activities of daily living; and (3) lack of objective medical evidence to support Plaintiff's symptom testimony.  (AR 384-86.)  No malingering allegation was made, and therefore, the ALJ's reasons must be "clear and convincing."

---

[9] SSR 16-3p, rather than SSR 96-7p, governed the evaluation of subjective symptoms on remand.  *See* SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017) (indicating that SSR 16-3p was "applicable [rather than effective] on March 28, 2016").  SSR 16-3p instructs the ALJ to "consider all of the evidence in an individual's record," "to determine how symptoms limit ability to perform work-related activities."  *Id.* at *2. The Ninth Circuit has noted that SSR 16-3p is consistent with its prior precedent. *See Trevizo v. Berryhill*, 871 F.3d 664, 678 n.5 (9th Cir. 2017) (SSR 16-3p "makes clear what [Ninth Circuit] precedent already required").

### a. Reason No. 1:  Effective Treatment

The ALJ observed that "medications have been relatively effective in controlling [Plaintiff's] symptoms."  (AR 386.)  Evidence that treatment can effectively control a claimant's symptoms may be a clear and convincing reason to find a claimant less credible.  *See Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for purposes of determining eligibility for SSI benefits.").  The ALJ noted that in 2012, after restarting her medications that she had run out of for a week, Plaintiff "was at baseline pain levels . . . and encouraged by her doctor to exercise . . . which suggest medications have been relatively successful in controlling her pain symptoms."[10]  (AR 386.)  The ALJ also noted that in September 2013, a rheumatologist wrote that Plaintiff "did very well on Lyrica" and "no longer needed regular follow up with rheumatology."  (AR 266, 385-86.)

The medical evidence on which the ALJ relied, however, indicates that Plaintiff reported a baseline pain level of 7/10 (down from 8/10 pain when she had run out of her medication) with nonrestorative sleep, she still had 18/18 tender points, and she was encouraged to exercise as part of her treatment plan.  (AR 236-37, 241-42, 246, 248, 250, 253.)  Even when taking Lyrica, which helped off and on, Plaintiff still reported 7/10 or 8/10 pain and continued to see Dr. Tremazi even after the September 2013 notation from Arrowhead rheumatology staff.  (AR 41, 236, 366-68.)  Other records show that Plaintiff's daily exercise provided "little or no relief," and Plaintiff did not see improvement from exercise.  (AR 319, 324.)  Overall, the treatment records indicate that Plaintiff's pain medications often did not work, Lyrica

---

[10] The Commissioner argues that the ALJ, in noting that that Plaintiff had run out of her medication, discounted Plaintiff's credibility for noncompliance with treatment. (JS at 22.)  The ALJ, however, did not rely on noncompliance in discounting Plaintiff's credibility.  (AR 386.)  Therefore, the Court cannot consider the Commissioner's post hoc rationale.  *See Garrison*, 759 F.3d at 1010 ("We review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely.") (citation omitted).

1    was sometimes not covered by insurance, her medications had to be changed, and

2    Plaintiff continued to suffer significant levels of pain and fatigue.  (AR 236-50.)

3        The ALJ's finding that Plaintiff's medications were "relatively successful in

4    controlling her pain symptoms" is not a clear and convincing reason, supported by

5    substantial evidence, for discounting Plaintiff's subjective statements.

6                    **b.  Reason No. 2:  Plaintiff's Activities of Daily Living**

7        The ALJ found that Plaintiff's activities of daily living were inconsistent with

8    Plaintiff's subjective symptom testimony.  (AR 386.)  The ALJ noted that Plaintiff

9    "described activities of daily living involving the use and movement of shoulders and

10   hips," suggesting she is not as limited as one would expect given her complaints of

11   joint pain "everywhere," especially in her shoulders and hips.  (AR 386.)   The ALJ

12   pointed to Plaintiff's testimony that she "did household chores incrementally

13   throughout the day and drove 2-3 times a week to go to the store or doctor

14   appointments," and medical records noting "that she went out for a one-hour walk

15   everyday."  (AR 386.)

16       Inconsistencies between symptom allegations and daily activities may act as a

17   clear and convincing reason to discount a claimant's credibility.  *See Tommasetti v.*

18   *Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Bunnell v. Sullivan*, 947 F.2d 341, 346

19   (9th Cir. 1991).  But a claimant need not be utterly incapacitated to obtain benefits.

20   *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).  "If a claimant is able to spend a

21   substantial part of his day engaged in pursuits involving the performance of physical

22   functions that are transferable to a work setting, a specific finding as to this fact may

23   be sufficient to discredit a claimant's allegations."  *Morgan*, 169 F.3d at 600; *accord*

24   *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001).

25       Regarding Plaintiff's daily walks, this Court previously rejected this reason for

26   discounting Plaintiff's subjective testimony (AR 455-56), and it does so again for the

27   same reasons.  Plaintiff testified that she takes the walks despite her pain and for

28   therapeutic reasons.  (AR 46.)  Such activity "does not mean she could concentrate

on work despite the pain or could engage in similar activity for a longer period given the pain involved." *Vertigan*, 260 F.3d at 1050.  Plaintiff's ability to walk for an hour with pain is not inconsistent with her alleged symptoms.

The remaining question is whether Plaintiff's ability to do household chores incrementally throughout the day and drive two or three times a week to the store or doctor appointments detracts from her overall credibility, and the Court finds that it does not.  The fact that Plaintiff carried on activities such as intermittent daily household chores and driving two to three times a week is not inconsistent with her alleged symptoms because the record does not show that such activities consumed a "*substantial part*" of Plaintiff's day.  *See id.*  Further, the mere ability to perform some daily activities is not necessarily indicative of an ability to perform work activities because "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication."  *Fair*, 885 F.2d at 603; *see also Molina*, 674 F.3d at 1112-13 (the ALJ may discredit a claimant who "participat[es] in everyday activities indicating capacities that are transferable to a work setting").  The critical difference between such activities "and activities in a full-time job are that a person has more flexibility in scheduling the former . . . , can get help from other persons . . . . , and is not held to a minimum standard of performance, as she would be by an employer."  *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) (cited with approval in *Garrison*, 759 F.3d at 1016).  Indeed, Plaintiff testified that she does chores around the house little by little throughout the day, but rests in between for "[a] few minutes in each different position," including lying down.  (AR 38-39.)

The Court finds that this reason is not a clear and convincing reason, supported by substantial evidence, to discount Plaintiff's subjective statements.

///

///

///

17

1

2

### c. Reason No. 3:   Lack of Supporting Objective Medical Evidence

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

The remaining reason for discounting Plaintiff's subjective testimony--lack of supporting objective evidence--cannot form the sole basis for discounting symptom testimony.  *See Burch*, 400 F.3d at 681 ("Although lack of medical  evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."); *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) ("[A] finding that the claimant lacks credibility cannot be premised wholly on a lack of medical support for the severity of his pain.").  Even if it could, this reasoning, with respect to fibromyalgia, is erroneous.   The ALJ relied on Plaintiff's "physical, neurological, and musculoskeletal exam results reflect[ing] that she was fully ambulatory with normal neurological, sensory, motor and range of motion findings."[11]  *See Revels*, 874 F.3d at 666 (finding ALJ erred in discounting claimant's testimony based on normal examination results, including normal muscle strength, tone, stability, and range of motion, which are "perfectly consistent with debilitating fibromyalgia").  As discussed above, fibromyalgia is diagnosed "entirely on the basis of patients' reports of pain and other symptoms," and "there are no laboratory tests to confirm the diagnosis."  *Benecke*, 379 F.3d at 590.

19

20

21

In sum, the ALJ did not give clear and convincing reasons, supported by substantial evidence, for discounting Plaintiff's subjective testimony, and remand is warranted.

22

///

23

///

24

_____

25

26

27

28

[11] The ALJ's other given reason for discounting Plaintiff's subjective statements was that a rheumatologist wrote in September 2013 that she "did very well on Lyrica" and "no longer needed regular follow up with rheumatology."  (AR 385-86.)  The longitudinal record shows that nevertheless, Plaintiff continued treatment after September 2013 with a different rheumatologist, Dr. Tremazi, who treated her for severe pain and fatigue.  (AR 350-73.)

1

### C.    Remand For Immediate Award of Benefits

Before ordering remand for an award of benefits, three requirements must be met:  (1) the Court must conclude that the ALJ failed to provide legally sufficient reasons for rejecting evidence; (2) the Court must conclude that the record has been fully developed and further administrative proceedings would serve no useful purpose; and (3) the Court must conclude that if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.  *Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015)  (citations omitted).  Even if all three requirements are met, the Court retains flexibility to remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act."  *Id.* (citation omitted).

Here, the ALJ erred in considering the relevant medical evidence and, for the second time, in discounting Plaintiff's subjective statements.  The Court concludes that the record has been fully developed and that further administrative proceedings would serve no useful purpose.  The record includes treatment notes from regular rheumatology visits from 2012-2018, a functional capacity assessment from Plaintiff's treating rheumatologist, testimony from Plaintiff, and testimony from two VEs.  The only medical opinion remaining to rebut Dr. Tremazi's opinion is one of a non-examining State agency physician who gave great weight to the opinion of consultative examiner Dr. Bernabe, who is no longer an accepted medical source, and found Plaintiff's impairments non-severe.  (AR 62, 415.)  Further administrative proceedings regarding her claim with a date last insured of almost seven years ago would not be productive, especially because she has testified twice, and any further consultative examination would be dealing with stale evidence.[12]  Given the VE's

---

[12] Even if there were outstanding issues to be resolved, the credit-as-true rule could be applied based on Plaintiff's advanced age and severe delay in obtaining a resolution.  *See Vasquez v. Astrue*, 572 F.3d 586, 593-94 (9th Cir. 2009) (applying credit-as-true rule where claimant was 58 years old and her claim had been pending

testimony, if Dr. Tremazi's opinion and Plaintiff's statements are credited as true, the ALJ would be required to find Plaintiff disabled on remand.  (AR 414.)  Further, there is no "serious doubt" that Plaintiff is disabled, given that she has had 18/18 tender point examinations and treatment notes show that she was consistently suffering from severe pain.  *See Revels*, 874 F.3d at 669 (remanding for award of benefits in part because claimant's "impairment of fibromyalgia has been repeatedly substantiated by tender-point examinations, which SSR 12-2P establishes as proper evidence of the condition[, and claimant's] . . . testimony, her function reports, and the treatment notes from her doctors consistently show that she was suffering from severe pain").  Accordingly, the Court credits the evidence as true and remands for an immediate award of benefits.

///
///
///
///
///
///
///

for approximately seven years, "even where application of the rule would not result in the immediate payment of benefits"); *see also Hammock v. Bowen*, 879 F.2d 498, 500, 503 (9th Cir. 1989) (finding that due to claimant's age, 57 years old at the time of hearing, and the fact that her claim had been pending at least eight years, the ALJ must credit her testimony as true on remand); *Sanchez v. Berryhill*, No. EDCV 16-1774-FMO-MRW, 2018 WL 4694349, at *9 (C.D. Cal. July 19, 2018) (ordering the ALJ to credit as true where claimant was 52 years old and his claim was pending for six years).  Plaintiff is now a person of advanced age at 55 years old and her claim has been pending for over seven years.  *See Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1069 (9th Cir. 2010) ("Social security regulations divide claimants into three age categories:  younger persons (those persons under age 50), persons closely approaching advanced age (those persons age 50-54), and persons of advanced age (those persons age 55 or older).") (citing 20 C.F.R. § 404.1563(c)-(e)).

**V.     CONCLUSION**

IT IS ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter for an immediate award of benefits.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.


DATED:  May 15, 2020                                   /s/
                                                                    ROZELLA A. OLIVER
                                                                    UNITED STATES MAGISTRATE JUDGE


**NOTICE**

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN WESTLAW, LEXIS/NEXIS, OR ANY OTHER LEGAL DATABASE.**

21